IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:23-cv-01342-CNS-SBP

JESSE CUNNINGHAM,

    Plaintiff,

v.

CITY OF FORT COLLINS and
JASON HAFERMAN,

    Defendants.

## ORDER

This matter comes before the Court on Defendants City of Fort Collins and Sergeant Allen Heaton's Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) and Request for Qualified Immunity.[1] ECF No. 19. For the following reasons, the motion is DENIED.

### I. BACKGROUND[2]

---

[1] The City of Fort Collins (the City) and Sergeant Allen Heaton filed the instant motion to dismiss. ECF No. 19. Mr. Cunningham was granted leave to amend his complaint to add Corporal Jason Bogosian as a defendant; however, because the amended complaint did not alter the substance of the claims asserted against the City and Sergeant Heaton, Magistrate Judge Prose found that an amended motion to dismiss was unnecessary. ECF Nos. 24-1, 26. Corporal Bogosian then moved to dismiss the amended complaint. ECF No. 39. Subsequently, Mr. Cunningham voluntarily dismissed both Sergeant Heaton and Corporal Bogosian from the action. ECF Nos. 44, 45. Accordingly, the Court addresses only those arguments in the instant motion to dismiss pertaining to the City's alleged *Monell* liability, finding that the arguments seeking qualified immunity for Sergeant Heaton are now moot.

[2] The following facts are drawn from Mr. Cunningham's First Amended Complaint and Jury Demand. ECF No. 24-1. For purposes of this motion, the Court accepts as true, and view in the light most favorable to Mr.

1

### A.  Mr. Cunningham's DUI arrest

On July 29, 2021, while vacationing in Colorado, Plaintiff Jesse Cunningham went out on a whitewater rafting trip with his wife and two daughters. ECF No. 24-1, ¶¶ 51, 53. After the excursion, Mr. Cunningham attempted to withdraw money from a nearby ATM to tip the rafting instructor, but no money came out. *Id.*, ¶ 54. Mr. Cunningham consumed two 3.2% ABV beers over the course of two hours while the family waited for the ATM operator to arrive and provide a refund. *Id.* Afterward, the family went to dinner and, at 8:15 p.m., Mr. Cunningham started to drive back to where the family was staying in Estes Park. *Id.*, ¶ 55.

Minutes later at 8:18 p.m., the family witnessed a catastrophic accident involving a car that had pulled out in front of three motorcyclists at an intersection, causing all of them to crash. ECF No. 24-1, ¶¶ 55–56. Mr. Cunningham—a combat veteran with medical training—pulled over to render lifesaving aid to the motorcyclists while his wife called 911. *See id.*, ¶¶ 57–61. Later, since Mr. Cunningham and his family were the primary witnesses to the accident, first responders asked them to remain on scene to fill out witness statements and answer the accident reconstruction officers' questions. *Id.*, ¶ 62. While standing on the side of the road, Defendant Jason Haferman—then a DUI Officer with the Fort Collins Police Services (FCPS)—arrived on scene. *Id.*, ¶¶ 7, 14, 64. Officer Haferman addressed Mr. Cunningham and informed him that someone on scene thought

---

Cunningham, all factual allegations contained in the complaint. *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).

they had smelled the odor of alcohol on him. *Id.*, ¶ 65. Mr. Cunningham answered truthfully that he had consumed two light beers nearly four hours prior. *Id.*, ¶ 67.

In response, Officer Haferman informed Mr. Cunningham that he needed to undergo physical roadside testing to prove he was safe to drive. ECF No. 24-1, ¶ 69. Mr. Cunningham explained that he was completely exhausted from the events of that day, and asked if he could instead do a breath test to prove that he was not impaired. *Id.*, ¶ 70. Officer Haferman told him that breath testing "wasn't admissible in court" and insisted that a roadside balancing test was necessary, so Mr. Cunningham complied. *Id.*, ¶¶ 71, 74. Officer Haferman, however, failed to administer the test in the standardized manner in which he was trained, and he later included "multiple lies" or exaggerations in his report regarding Mr. Cunningham's test performance. *Id.*, ¶¶ 75, 91–92. At the test's conclusion, Officer Haferman arrested Mr. Cunningham, charging him with DUI and two misdemeanor counts of child abuse (one for each of his daughters in the car). *Id.*, ¶ 77. Despite Mr. Cunningham pleading with Officer Haferman to administer a breath test,[3] Officer Haferman refused, instead transporting Mr. Cunningham off scene for a blood draw. *Id.*, ¶¶ 78–81. Mr. Cunningham then spent the night in jail. *Id.*, ¶¶ 87–88.

In the ensuing weeks and months, Mr. Cunningham and his family suffered negative impacts from the DUI arrest. For instance, Officer Haferman made a referral to child protective services in Nebraska in connection with Mr. Cunningham's child abuse charges, so CPS personnel showed up at the family's home to interview the children. ECF

---

[3] Interestingly, after arresting Mr. Cunningham, Officer Haferman allowed Mr. Cunningham's wife to submit to breath testing to determine whether she was fit to drive the family's car away from the scene. *See* ECF No. 5, ¶¶ 83–86.

3

No. 24-1, ¶ 90. Both children required counseling to process their trauma from the events surrounding their father's arrest. *Id.*, ¶ 99. Further, while the criminal case was pending, Mr. Cunningham was required to report his charges to his employer, the Department of Homeland Security, which opened an investigation into his conduct. *Id.*, ¶ 96. Because of this, Mr. Cunningham was passed over for a promotion. *Id.*

Ultimately, on October 20, 2021—three months after the arrest—Mr. Cunningham's blood results came back negative for alcohol and all impairing drugs. ECF No. 24-1, ¶ 94. The Larimer County District Attorney' Office dismissed Mr. Cunningham's charges accordingly. *Id.*, ¶ 95.

Beginning in April 2022, as detailed below, Officer Haferman's pattern of wrongful DUI arrests became the subject of significant media scrutiny. *See, e.g.*, ECF No. 24-1, ¶¶ 118–19. After a months-long internal investigation, FCPS announced publicly that Officer Haferman had resigned from the force in December 2022. *Id.*, ¶ 167. On May 3, 2023, Mr. Cunningham filed suit in Larimer County District Court; pertinent here, Mr. Cunningham's complaint included a § 1983 claim against the City of Fort Collins, alleging *Monell* liability for failure to train and supervise FCPS personnel, including Officer Haferman, in lawful DUI arrest protocols. *See id.*, ¶¶ 202–10. The action was removed to federal court on May 26, 2023. *See* ECF No. 1.

### B. Officer Haferman's pattern of wrongful DUI arrests

Officer Haferman began working for FCPS as a patrol officer in 2017. ECF No. 24-1, ¶ 13. As part of his FCPS onboarding, Officer Haferman received training on the proper administration of Standardized Field Sobriety Tests (SFSTs). *Id.*, ¶ 23. Once on patrol,

4

Officer Haferman accumulated such a high volume of DUI arrests that, in 2020, FCPS promoted him to DUI Officer—a role in which the officer's exclusive focus is performing traffic stops and investigating DUI-related offenses. *Id.*, ¶¶ 14, 16. Just six months into his DUI Officer tenure, Officer Haferman's DUI arrest numbers were significantly higher than those of any other DUI Officer to precede him in FCPS's history. *Id.*, ¶ 39.

At least as early as 2021, however, Officer Haferman was performing DUI stops and administering SFSTs to subjects in a manner inconsistent with his training and designed to create a false impression of the subject's intoxication when described in his arrest reports. ECF No. 24-1, ¶ 23. More broadly, the defects in Officer Haferman's DUI investigations and arrests commonly included:

- Interpreting normal, innocuous human behaviors as "clues of impairment" when, in fact, his training instructed the opposite;

- Relying on certain made-up clues of impairment not taught in any SFST training (and claiming that those non-clues were simply the product of "advanced techniques");

- Administering the Horizontal Gaze Nystagmus (HGN) test to subjects incorrectly, and then citing his observations during botched HGN tests to support his arrest decisions;

- Writing arrest reports containing exaggerations and falsehoods regarding clues of impairment he had observed, which were clearly belied by his own body-worn camera footage; and

- Muting and deactivating his body-worn camera during citizen contacts and arrests, in violation of both FCPS policy and Colorado law.

*Id.*, ¶¶ 24–26, 30. Many of these defects were readily observable on Officer Haferman's body-worn camera recordings of DUI stops. *See id.*, ¶¶ 27, 161. However, no one at FCPS ever watched his body-worn camera footage or otherwise reviewed his

performance on DUI stops to ensure that those stops were conducted according to FCPS training and policy. *See, e.g.*, *id.*, ¶¶ 27–28, 34–35, 38, 41–42, 127, 131–35.

Mr. Cunningham's complaint details 15 DUI arrests made between January 2021 and April 2022 (aside from his own) in which (i) Officer Haferman used DUI investigation techniques that failed to conform with his training, (ii) the subjects' blood or breath testing came back "negative" or "presumptively unimpairing" for alcohol and drugs, and (iii) dismissals or acquittals of the subjects' DUI charges resulted. *Id.*, ¶¶ 31 (C.B.), 37 (Harley Padilla), 43 (G.C.), 44 (R.B.), 45 (Cody Erbacher), 46 (Carl Sever), 106 (B.C.), 107 (K.S.), 108 (D.A.), 109 (G.E.), 110 (S.J.), 111 (Harris Elias), 112 (L.M.), 113 (Carly Zimmerman), 114 (Derrick Groves). Although FCPS maintained publicly that it "always conduct[s] an internal review of any DUI arrest made by one of its officers that has chemical results come back negative for drugs/alcohol," *see, e.g.*, ECF No. 24-1, ¶¶ 33, 137, 140, no such review appears to have been conducted by FCPS in any of the above-listed cases until well after Officer Haferman's conduct became the subject of media attention. Meanwhile, by the end of 2021, FCPS (as an entire agency) had made 504 DUI arrests; of those, Officer Hafferman was involved in 191, or nearly 40%. *Id.*, ¶ 116.

In April 2022, Fox 31 Denver (KDVR) received a tip about Officer Haferman, and reporters at multiple outlets began investigating his pattern of wrongful DUI arrests. *See, e.g.*, ECF No. 24-1, ¶¶ 119, 136, 138, 141. Around that time, Officer Haferman also became the subject of an internal affairs investigation at FCPS. *See id.*, ¶ 156–57. During an interview with FCPS's Professional Standards Unit, Officer Haferman stated that throughout his tenure as DUI Officer, he "believed he was doing good work," and "didn't

6

have any reason to believe he wasn't doing good work based on no supervisors or experts in the field saying otherwise." *Id.*, ¶ 160.

In September 2022, the Larimer County DA informed FCPS that it would no longer prosecute cases in which Officer Haferman was the investigating officer. *See* ECF No. 24-1, ¶ 165. Shortly thereafter, FCPS placed Officer Haferman on administrative leave. *Id.*, ¶ 166. In December 2022, FCPS announced that Officer Haferman had resigned, and explained that FCPS's internal review had revealed that Officer Haferman had been making false statements in his arrest reports, performing SFSTs incorrectly, and arresting subjects on DUI-related offenses without probable cause. *Id.*, ¶ 167.

## II.  STANDARD OF REVIEW

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must allege facts, accepted as true and interpreted in the light most favorable to the plaintiff, to state a claim to relief that is plausible on its face. *See, e.g.*, *Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016). A plausible claim is one that allows the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then a plaintiff has failed to "nudge [the] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quotation omitted). In assessing a claim's plausibility, "legal conclusions" contained in the complaint are not entitled to the assumption of truth. *See Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214

7

(10th Cir. 2011). The standard, however, remains a liberal pleading standard, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quotation omitted).

## III.  DISCUSSION

The Court has carefully considered Mr. Cunningham's complaint, the parties' briefing in connection with the City's motion to dismiss, the entire case file, and the relevant legal authority. The issues have been briefed thoroughly, oral argument would not materially assist in the determination of this matter, and the Court accordingly declines in its discretion to hold a hearing. *See* D.C.COLO.LCivR 7.1(h).

Below, the Court sets forth the applicable law with respect to *Monell* claims brought pursuant to § 1983. Then, turning to an analysis of Mr. Cunningham's *Monell* claim, the Court denies the City's motion to dismiss.

### A.  Municipal liability claims under *Monell*

A municipality faces § 1983 liability under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), where (i) an alleged official policy or custom (ii) causes a plaintiff's constitutional injury, and (iii) the policy or custom was "enacted or maintained with deliberate indifference" to a near-inevitable constitutional injury. *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013) (citation omitted).

A plaintiff satisfies the "official policy or custom" element by plausibly alleging that the municipality maintains one of the following:

8

- A formal regulation or policy statement;

- An informal custom amounting to "a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law";

- Decisions of employees with final policymaking authority;

- Ratification by final policymakers of the decisions of subordinates to whom authority was delegated subject to the policymakers' "review and approval"; or

- "Failure to adequately train or supervise employees," as long as the failure results from "deliberate indifference" to the plaintiff's injuries.

*Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (quotations and alterations omitted). The "official policy or custom" requirement is intended to distinguish "acts of the municipality from acts of employees of the municipality," making clear that municipal liability is limited to actions "for which the municipality is actually responsible." *Cacioppo v. Town of Vail, Colo.*, 528 F. App'x 929, 932 (10th Cir. 2013) (quotations omitted).

As for the "causation" element, the plaintiff must plausibly allege "a direct causal link between the policy or custom and the injury alleged." *See Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1284 (10th Cir. 2019) (quotation omitted); *accord Bryson*, 627 F.3d at 788; *Schneider*, 717 F.3d at 770. Put differently, a municipality is not liable for the constitutional violations of its employees "simply because such a violation has occurred; a policy or custom must have actually caused that violation." *Cordova v. Aragon*, 569 F.3d 1183, 1194 (10th Cir. 2009) (citation omitted).

9

Finally, for the requisite state of mind element, the plaintiff must plausibly allege that the municipal action was taken with "'deliberate indifference' as to its known or obvious consequences." *Schneider*, 717 F.3d at 770 (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 407 (1997)). This standard is satisfied where the plaintiff alleges that a municipality has "actual or constructive notice that its action or failure to act is substantially certain" to result in a constitutional violation, and it "consciously or deliberately" disregards the risk of harm. *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998) (quotation omitted). While "notice" is often shown by alleging a "pattern of tortious conduct," a municipality's deliberate indifference may also be demonstrated if "a violation of federal rights is a highly predictable or plainly obvious consequence of a [the] municipality's action or inaction." *Cacioppo*, 528 F. App'x at 932 (citing *Schneider*, 717 F.3d at 771).

### B. Mr. Cunningham's *Monell* claim against Fort Collins

In its motion to dismiss, the City argues that the complaint contains insufficient factual content to establish *Monell* liability based upon FCPS's failure to train or supervise Officer Haferman in the performance of his DUI Officer duties.[4] *See* ECF No. 19 at 9–12. The Court disagrees.

---

[4] The Court does not analyze the sufficiency of the complaint based on other theories of *Monell* liability— e.g., formal or informal policy, decisions of final policymakers, or ratification—since the City did not see fit to challenge the complaint on those bases until its reply brief. *See Gutierrez v. Cobos*, 841 F.3d 895, 902 (10th Cir. 2016) (noting that courts generally consider issues raised for the first time in a reply brief to be waived); *Reedy v. Werholtz*, 660 F.3d 1270, 1274 (10th Cir. 2011) (same); see also *Pub. Serv. Co. of Colo. v. Bd. of Cnty. Comm'rs of San Miguel Cnty.*, No. 04-cv-01828-REB-CBS, 2006 WL 8454233, at *1 (D. Colo. Jan. 27, 2006). ("[I]t is inequitable and improper for a party, although raising the bare bones of an argument in its opening brief, to reserve a fully developed presentation of that argument for the reply, when the opposing party has no meaningful opportunity to respond.").

Mr. Cunningham's complaint revolves largely around FCPS's failure to supervise Officer Haferman, or to take corrective action after he repeatedly made DUI arrests without probable cause. Based on the allegations detailed above, the Court finds that Mr. Cunningham has sufficiently pleaded a "policy" of failure to supervise for *Monell* purposes. The fact that so many DUI charges originating from a single investigating officer were dismissed after chemical testing came back negative for any drugs and alcohol, in and of itself, would naturally create a need to review the officer's performance during DUI stops to determine what corrective measures may be necessary.

The complaint indicates, however, that despite FCPS's insistence that it "always conduct[s] an internal review of any DUI arrest made by one of its officers that has chemical results come back negative for drugs/alcohol," *see, e.g.*, ECF No. 24-1, ¶ 33, there was no record that FCPS had reviewed any of the 15 defective DUI arrests above until after Officer Haferman's internal affairs investigation was opened, *see id.*, ¶¶ 31, 37, 43–46, 106–14. According to the complaint, had FCPS timely performed this review, Officer Haferman's pattern of conducting SFSTs incorrectly and making arrests without probable cause would have been readily apparent in his body-worn camera footage and would have prompted remedial action. *See id.*, ¶¶ 27, 161. Similarly, the complaint alleges that FCPS had received other warning signs about Officer Haferman's deficient performance—including that the Larimer County DA had several "previous discussions" with FCPS about the quality of Officer Haferman's DUI investigations, and that an FCPS corporal had noticed Officer Haferman performing SFSTs incorrectly—yet FCPS did not effectively intervene or re-train him to prevent further baseless DUI arrests. *See id.*, ¶¶ 30,

11

165. Perhaps most significantly, Officer Haferman himself stated that he "didn't have any reason to believe he wasn't doing good work based on no supervisors or experts in the field saying otherwise." *Id.*, ¶ 160.

A clear pattern or history of a single officer's DUI charges being dismissed for lack of probable cause may demonstrate a high likelihood of similar future unconstitutional DUI arrests unless that officer is supervised differently. In that light, FCPS's failure to take corrective action in the face of Officer Haferman's pattern of meritless DUI arrests plausibly states a "policy" of deficient supervision. *See Zartner v. City & Cnty of Denver*, 242 F.Supp.3d 1168, 1174–75 (D. Colo. 2017); *see also Vann v. City of N.Y.*, 72 F.3d 1040, 1051 (2d Cir. 1995) (focusing on the supervision of a particular problem officer and finding that summary judgment for the city was inappropriate where the evidence showed an "absence of any significant administrative response to [the problem officer's] resumption of his abusive conduct upon reinstatement").

For the same reasons, the allegations included in the complaint satisfy the "causation" element—a requirement where a plaintiff alleges *Monell* liability for a failure to supervise employees. *See Schneider*, 717 F.3d at 769. True enough, "[t]he causation element is applied with especial rigor when the municipal police or practice is itself not unconstitutional, for example, when the municipal liability claim is based upon inadequate training, supervision, and deficiencies in hiring." *Id.* at 770 (citation omitted). But here, as detailed above, "a sustained pattern of [unconstitutional arrests made by] one officer that does not result in discipline or correction . . . makes the probability of another violation

more likely." *Zartner*, 242 F.Supp.3d at 1176. This is sufficient at the pleading stage to demonstrate causation.

Finally, the complaint plausibly alleges the "deliberate indifference" element of *Monell* liability. Generally, in order to show this element, a plaintiff must allege that "[t]he need for more or different supervision . . . is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policy of the City can be said to have been deliberately indifferent to the need." *Brown v. Gray*, 227 F.3d 1278, 1291–92 (10th Cir. 2017). And pertinent here, deliberate indifference to the need for supervision may be inferred by "a pattern of tortious conduct," *Cacioppo*, 528 F. App'x at 932, or where complaints or other clear warning signs "are followed by no meaningful attempt on the part of the municipality to investigate or to forestall future incidents." *Zartner*, 242 F.Supp.3d at 1175 (quoting *Vann*, 72 F.3d at 1049).

Again, as noted above, the complaint sets forth Officer Haferman's pattern of wrongful DUI arrests in great detail, and it further alleges that the City was given numerous warning signs—i.e., over a dozen of Officer Haferman's DUI charges being dismissed as wholly devoid of probable cause, multiple complaints from the Larimer DA, and an FCPS corporal witnessing Officer Haferman's substandard SFST techniques first-hand. Despite these warning signs, FCPS failed to subject Officer Haferman's body-worn camera footage or arrest reports to any meaningful review, provide Officer Haferman with any remedial training, or otherwise intervene to prevent future wrongful DUI arrests. As such, the complaint adequately alleges that the City had ample notice of Officer Haferman's conduct that it should have responded to, but was deliberately indifferent to

the obligation to prevent other constitutional violations. *See Zartner*, 242 F.Supp.3d at 1175–76.

In sum, because the complaint contains sufficient factual content to establish the City's liability for failing to supervise Officer Haferman, dismissal of Mr. Cunningham's *Monell* claim at this stage is unwarranted.

## IV.  CONCLUSION

Consistent with the foregoing analysis, Defendants City of Fort Collins and Sergeant Allen Heaton's Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) and Request for Qualified Immunity, ECF No. 19, is DENIED.

DATED this 26th day of March 2024.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge